Szukics, Appellant, *v.* Ruch.

Argued April 11, 1951. Before STERN, STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

*Laurence H. Eldredge,* with him *Martin H. Philip* and *Philip & Philip,* for appellant.

*Ben Branch,* with him *Sidney R. Webb,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, June 27, 1951:

This action in trespass was instituted by Ernest J. Szukics, appellant, against Kenneth Ruch, appellee, to recover for personal injuries sustained when Szukics, while standing at the side of a disabled car to assist in its removal from one of the traffic lanes on a three-lane bridge, was struck by an automobile driven by Ruch. The trial judge granted appellee's motion for a compulsory non-suit, holding appellant guilty of contributory negligence as a matter of law for the reason that he had his back toward known oncoming traffic. This appeal is from the order of the court below dismissing his motion to remove the compulsory non-suit.

Ernest J. Szukics, appellant, is one of six young men who met at a restaurant in Palmerton in early morning, April 2, 1949, after driving around in two automobiles during the previous evening. One car, a Buick, was driven by appellant, and riding with him were Vargo, Oravec and Bucko. The other car, a cream colored Plymouth convertible, was driven by Sikorsky, and riding with him was Sauers. Szukics and his companions left the restaurant in the Buick at about 2:15 a.m. and drove eastwardly toward a bridge which crosses the Lehigh River. The bridge is 34 feet six inches across the roadway, or three automobile traffic lanes wide. It lies in a general east-west direction, and its western approach joins a curve from the southwest. He was followed shortly thereafter by Sikorsky and Sauers

in the Plymouth. Sikorsky passed the Buick before it reached the bridge. He did not successfully negotiate a curve leading to the west end of the bridge and his car skidded about 150 feet, jumped a curb eight to ten inches high, and scraped the left side of the car along the concrete wall on the north side of the bridge for about 172 feet before coming to a stop. The Plymouth was then headed in a general southerly direction, across the north lane of the roadway, with the rear wheels resting on the pavement on the north side of the bridge.

Szukics stopped his car off the highway at the west end of the bridge and he and his companions hurried to the Plymouth car, arriving there just as Sikorsky and Sauers, apparently uninjured, got out of the car. Lights of an automobile were observed by all of the boys nearing the eastern approach to the bridge. The bridge was 1,539 feet in length. Sikorsky, Bucko and Vargo ran along the roadway eastwardly about 30 or 40 feet to head off the approaching car. They waved their arms and a flashlight. Sikorsky, who had the flashlight, stood on the south edge of the north lane. The night was clear and the roadway was dry.

Appellant continued to examine the damage to the left side of the Plymouth car and, contemplating raising the left front fender from the tire upon which it was pressing so that the car could be moved, had his hands on the fender and therefore his back toward the approaching car. Oravec was standing on appellant's left nearest to the center lane of the bridge, and Sauers was on appellant's right.

Appellee came upon the bridge and was traveling westwardly in the north lane with his lights turned on. The damaged Plymouth car standing across the same lane was without lights, but the scene of the accident was illuminated by nearby mercury-vapor lamps on thirty feet high standards. Appellee failed to slow down

his vehicle and Sikorsky and the others who were attempting to flag him down were forced to jump out of the way. One of these men, Bucko, was struck by appellee's car. The latter continued on and the right front portion of his car struck the men examining the left front fender of the Plymouth, injuring appellant and killing another. Appellee struck Sauers, who was killed, kept on going and hit appellant, Oravec and then the Plymouth. When appellee's vehicle came to a stop southwest of the disabled car, the rear was about forty-seven feet beyond the front end of the Plymouth.

Appellant contends that (1) he was not contributorily negligent as a matter of law, and (2) there was sufficient evidence to permit the jury to find that appellee was guilty of reckless or wanton conduct, to which contributory negligence is no defense.

Contributory negligence will be declared as a matter of law only where it is so clear that there is no room for fair and reasonable disagreement as to its existence: *Dodson v. Philadelphia Transportation Company,* 366 Pa. 287, 77 A. 2d 383; *Callahan v. A. Wishart & Sons Company,* 365 Pa. 498, 76 A. 2d 386; *Mazi v. McAnlis,* 365 Pa. 114, 74 A. 2d 108; *Caulton v. Eyre & Co., Inc.,* 330 Pa. 385, 199 A. 136; *Altomari v. Kruger,* 325 Pa. 235, 188 A. 828. If reasonable doubt exists as to the inferences that may be drawn from the oral evidence, then it must be submitted to a jury. In passing on a motion to remove a compulsory nonsuit and in reviewing a denial of such motion, the evidence must be considered in a light most favorable to plaintiff, and he must be given the benefit of every inference and deduction reasonably to be made therefrom: *Pennsylvania Railroad Co. v. J. Jacob Shannon & Co.,* 363 Pa. 438, 70 A. 2d 321; *Kallman v. Triangle Hotel Co. of Pennsylvania,* 357 Pa. 39, 52 A. 2d 900.

The test of the appropriateness of a compulsory nonsuit is whether a plaintiff's negligence appears so irrefutably from the evidence in his own case that a jury would not be permitted to absolve him therefrom: *Sargeant v. Ayers,* 358 Pa. 393, 57 A. 2d 881.

Appellant was standing by the side of a damaged car to assist in removing it as a traffic hazard on a well illuminated highway 34½ feet wide. The night was clear and the pavement dry. He was aware that several companions (who were wearing light colored clothing) had proceeded to warn approaching traffic, and appellee in particular, of the existing danger by use of a flashlight and waving of arms. He did not stand in the portion of the roadway which remained open for moving traffic. To the contrary, he remained within the lane which was blocked to traffic by reason of the disabled light colored vehicle. The eastern end of the bridge was about a quarter of a mile away. There was a turn in the bridge but appellee had an unobstructed straightway view of *at least* 462 feet.

In the circumstances, it cannot be said as a matter of law that Szukics was bound to foresee that a driver of an approaching motor vehicle on that three-lane open roadway would, despite ample warning, continue toward him, proceed to strike three men and a clearly discernible damaged car. A jury should have been permitted to determine whether appellant reasonably assumed that the illumination from the oncoming car, the lights mounted on standards on the bridge, and the warnings of his companions, would disclose his presence and the presence of the disabled car, and that the driver would have his car under reasonable control and proceed into one of the other unoccupied lanes of the roadway: *Pedlow v. Lippens,* 351 Pa. 259, 40 A. 2d 426. One is not bound to anticipate the negligence of another: *Handfinger v. Barnwell Brothers, Inc.,* 325 Pa.

319, 189 A. 312; and certainly not the extraordinary negligence here manifest.

Granting of the motion for the compulsory non-suit in the instant case was done only after the trial judge assumed the province of resolving all inferences and deductions to be made from the evidence adversely to appellant. We are of opinion that his negligence is not so clear and patent on the record that it should be declared as a matter of law.

The cases relied upon by appellee and the court below do not justify entry of the compulsory non-suit. In *Kasanovich v. George,* 348 Pa. 199, 34 A. 2d 523, this Court held decedent guilty of contributory negligence as a matter of law when he walked along the roadway with his back toward possible approaching traffic and so near the trolley tracks that he would be struck by any trolley which attempted to pass him, Further, there was no indication, as here, of any endeavor to gain knowledge of the presence of an approaching car, nor of efforts to warn the motorman or stop the trolley as exist here. There is also the further distinction that exists between cases involving trolleys and motor vehicles. The former can operate and travel only upon definite portions of the road, whereas the latter are readily movable and maneuverable. *Pessolano v. Philadelphia Transportation Co.,* 349 Pa. 73, 36 A. 2d 497, relates to those cases in which it appears that the testimony of plaintiff with regard to his exercise of due care and observation is "contrary to fact", and where " '. . . it is vain for a person to say he looked and listened when, in spite of what his eyes and ears must have told him, he walked or drove in front of an approaching train or car by which he was immediately struck' ".

Holding as we do that the question of appellant's contributory negligence was for the jury, it is un-

necessary to pass upon the contention that there was sufficient evidence for the jury to find such recklessness on the part of appellee as to deprive him of contributory negligence as a defense.

The order appealed from is reversed and a *venire facias de novo* is directed.