J-A04024-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| OCWEN LOAN SERVICING, LLC | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SELWYN GANGADEEN AND SAVITRI GANGADEEN | |
| Appellants | No. 723 EDA 2016 |

Appeal from the Order Entered February 1, 2016
In the Court of Common Pleas of Monroe County
Civil Division at No(s): 2011-10742

BEFORE: SHOGAN, J., SOLANO, J., and PLATT, J.[*]

MEMORANDUM BY SOLANO, J.: **FILED SEPTEMBER 26, 2017**

Appellants Selwyn and Savitri Gangadeen appeal from the trial court's order of March 6, 2014, granting Appellee Ocwen Loan Servicing, LLC's preliminary objections, and from the February 1, 2016 order granting summary judgment in favor of Ocwen. We affirm.

On March 11, 2008, the Gangadeens borrowed $184,205 from Avelo Mortgage, LLC, doing business as Senderra. The loan was secured by a mortgage on the Gangadeens' property in Henryville, Monroe County. On December 1, 2009, the mortgage fell into default due to the Gangadeens' failure to make monthly payments. After the mortgage went into default, Avelo sold it to Ocwen.

---

[*] Retired Senior Judge assigned to the Superior Court.

On December 15, 2011, Ocwen filed a complaint in mortgage foreclosure against the Gangadeens, alleging that $233,185.53 was due on the loan.[1] On December 23, 2011, the Gangadeens filed a certification of participation in the Monroe County Residential Mortgage Foreclosure Diversion program, and a stay was imposed on judicial action. After numerous conciliation conferences, the parties were unable to reach an agreement, and the stay was lifted on September 17, 2013.

On December 2, 2013, the Gangadeens filed an Answer, New Matter, and Counterclaims. In their Answer, the Gangadeens stated: "The allegation that the Mortgage is in default is a conclusion of law to which no response is required . . . . The allegation is, therefore, denied, and if relevant, strict proof thereof is demanded at trial." Answer at ¶ 6. In addition, they set forth numerous defenses and "specifically denied that the sums set forth in . . . the Complaint are accurate statements of the amount actually due under the Mortgage, as payments made on behalf of the Defendants have not been properly credited to the subject loan or account." *Id.* at ¶ 7. The Gangadeens also asserted the following counterclaims: (1) breach of contract, including breach of a duty of good faith and fair dealing; (2) violation of the Truth in Lending Act, 15 U.S.C. §§ 1601-1616; (3) violation of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601-2617; and

_____

[1] This amount included the principal balance of $181,107.92, interest to date, late charges, escrow advances, fees, costs, and attorneys' fees.

- 2 -

(4) violation of the Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 to 201-9.3. The Gangadeens sought damages in excess of $50,000, costs of suit, attorneys' fees, rescission of the loan, and all other damages deemed recoverable according to law.

On January 3, 2014, Ocwen filed preliminary objections seeking dismissal of all of the Gangadeens' counterclaims under Rule of Civil Procedure 1028(a)(2) ("failure of a pleading to conform to law or rule of court") and 1028(a)(4) ("legal insufficiency of a pleading (demurrer)"). Both parties filed memoranda, and the trial court heard oral argument on March 3, 2014. On March 6, 2014, the trial court sustained Ocwen's preliminary objections and dismissed the Gangadeens' counterclaims. The trial court reasoned that the Gangadeens improperly sought money damages in a mortgage foreclosure action. Order, 3/6/14; Trial Ct. Op., 4/18/16, at 4.

Ocwen filed a reply to the Gangadeens' New Matter on March 27, 2014, and a motion for summary judgment and supporting memorandum of law on November 30, 2015. The Gangadeens filed a brief, in which they argued that summary judgment was improper because (1) they did not know the amount they owed, and (2) they had raised substantial, material issues in their New Matter. Br. in Opp'n to Pl.'s Mot. for Summ. J. at 5-6. They did not attach any exhibits to their brief. After oral argument, on February 2, 2016, the trial court granted Ocwen's motion for summary

judgment and entered judgment *in rem* in favor of Ocwen and against the Gangadeens for $316,578.80, together with ongoing interest and other costs and charges collectible under the mortgage, and for the foreclosure and sale of the property. On February 23, 2016, Ocwen filed a praecipe for entry of judgment and assessment of damages. On March 2, 2016, the Gangadeens filed a timely notice of appeal.

In this appeal, the Gangadeens raise the following issues:

1. Did the Court below err as a matter of law in dismissing the [Gangadeens'] Counterclaims against [Ocwen] for Breach of Contract, Failure to Comply with Truth in Lending disclosure requirements, violations of the Real Estate Settlement Procedures Act and Failure to comply with Pennsylvania Unfair Trade Practices and Consumer Protection laws?

2. Did the Court below err as a matter of law in dismissing the [Gangadeens'] Counterclaims, as they were integral to the entire case, particularly the creation of the mortgage and note, upon which [Ocwen] is relying?

3. Did the Court below err as a matter of law in granting [Ocwen's] Motion for Summary Judgment?

Gangadeens' Brief at 4.

**The Counterclaims**

In their first two issues, the Gangadeens contend that the trial court erred in granting Ocwen's preliminary objections to their counterclaims. We apply the following standard of review:

Our standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.

- 4 -

> Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Khawaja v. RE/MAX Cent.*, 151 A.3d 626, 630 (Pa. Super. 2016) (citation omitted). "A motion to strike the new matter as not pertinent is like a demurrer to the new matter." *Jefferies v. Hoffman*, 207 A.2d 774, 775 (Pa. 1965). "The decision whether to sever a counterclaim lies within the discretion of the trial court. Thus, the court's decision will not be overturned absent an abuse of that discretion." *Chrysler First Bus. Credit Corp. v. Gourniak*, 601 A.2d 338, 340 (Pa. Super. 1992).

The Gangadeens argue that the trial court erred in sustaining Ocwen's preliminary objections because their counterclaims were "integral to the entire case" and arose "from the same transaction or occurrence or series of transactions or occurrences from which [Ocwen's] cause of action arose." Gangadeens' Brief at 10. Moreover, the Gangadeens assert that they sought recoupment and alleged fraudulent inducement, which, they contend, are permissible counterclaims in a mortgage foreclosure action. *Id.* at 10, 11. As noted above, the trial court dismissed the Gangadeens' counterclaims on

the basis that they improperly sought money damages in an *in rem* mortgage foreclosure action.

Rules of Civil Procedure 1141 to 1150 govern mortgage foreclosure. Rule 1141(a) provides that a mortgage foreclosure action "shall not include an action to enforce a personal liability." "This restriction is equally applicable to a mortgagee and a mortgagor." ***Newtown Village P'ship v. Kimmel***, 621 A.2d 1036, 1037 (Pa. Super. 1993). This Court has explained:

> Mortgage foreclosure in Pennsylvania is strictly an *in rem* or "*de terris*" proceeding. Its purpose is solely to effect a judicial sale of the mortgaged property. The holder of a mortgage note can decide whether to file a foreclosure action or to file an *in personam* assumpsit action on the note, but the actions are not usually combined.
>
> Rule of Civil Procedure 1148, which governs which counterclaims are permissible in a mortgage foreclosure action, states:
>
> > A defendant may plead a counterclaim which arises from the same transaction or occurrence or series of transactions or occurrences from which the plaintiff's cause of action arose.
>
> We have held that this rule is to be interpreted narrowly, and only counterclaims that are part of or incident to the creation of the mortgage relationship itself are to be permitted. Therefore, Rule 1148 does not permit a counterclaim arising from a contract related to the mortgage, such as a contract for sale of real property. Nor does it permit counterclaims where the facts giving rise to the counterclaims occur after the creation of the mortgage and after the mortgagors were in default.
>
> Thus, in Pennsylvania, the scope of a foreclosure action is limited to the subject of the foreclosure, *i.e.*, disposition of property subject to any affirmative defenses to foreclosure or

counterclaims arising from the execution of the instrument(s) memorializing the debt and the security interest in the mortgaged property.

***Nicholas v. Hofmann***, 158 A.3d 675, 696-97 (Pa. Super. 2017) (quotation marks, footnote, and citations omitted).

The Gangadeens claim they were entitled to assert their counterclaims under ***Green Tree Consumer Discount Co. v. Newton***, 909 A.2d 811 (Pa. Super. 2006), which allowed the assertion of counterclaims to recoup or set off damages for claims under the Home Improvement Finance Act with respect to a home improvement loan. ***Green Tree*** has no applicability here. Indeed, the Court in ***Green Tree*** observed that "the general rule is that a recoupment claim is an improper defense to a mortgage foreclosure." 909 A.2d at 815. The Court in ***Green Tree*** recognized an exception to this general rule where the mortgage was made as an integral part of the home improvement loan, incorporated the terms of the home improvement contract, was recorded with that contract, and was signed by a person alleged to be incompetent and legally incapable of signing. ***See id.*** at 815. This case, which presents what the Court in ***Green Tree*** called "a typical mortgage foreclosure where the owners have taken out a loan to fund the purchase of a home and then defaulted on the payments," ***id.***, has none of the facts that gave rise to ***Green Tree***'s exception to the normal rule.

The counterclaims in this case do not deal with creation of the security interest in the Gangadeens' property. The breach of contract claim alleges

errors with respect to application of payments or computation of interest and other aspects of mortgage servicing. The statutory claims (none of which arise under the Home Improvement Finance Act at issue in *Green Tree*) relate to creation of the underlying loan. Accordingly, after careful review, we conclude that the trial court did not err in granting Ocwen's preliminary objections to the counterclaims. We agree with the trial court that because a mortgage foreclosure action is strictly *in rem*, the Gangadeens' counterclaims were impermissible. *See* Trial Ct. Op. at 4; Pa.R.Civ.P. 1141(a); *Nicholas,* 158 A.3d at 696.

## Summary Judgment

The Gangadeens also aver that the trial court erred in granting summary judgment in favor of Ocwen on its foreclosure claim.

> Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.
>
> Summary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Only when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment.

*Michael v. Stock*, 162 A.3d 465, 472-73 (Pa. Super. 2017) (citation omitted). "[P]arties seeking to avoid the entry of summary judgment

against them may not rest upon the averments contained in their pleadings. On the contrary, they are required to show, by depositions, answers to interrogatories, admissions or affidavits, that there is a genuine issue for trial." ***Washington Fed. Sav. & Loan Ass'n v. Stein***, 515 A.2d 980, 981 (Pa. Super. 1986) (citing Pa.R.Civ.P. 1035(d)).

"The holder of a mortgage is entitled to summary judgment if the mortgagor admits that the mortgage is in default, the mortgagor has failed to pay on the obligation, and the recorded mortgage is in the specified amount." ***Bank of Am., N.A. v. Gibson***, 102 A.3d 462, 465 (Pa. Super. 2014), ***appeal denied***, 112 A.3d 648 (Pa. 2015). "[I]n mortgage foreclosure actions, general denials by mortgagors that they are without information sufficient to form a belief as to the truth of averments as to the principal and interest owing [on the mortgage] must be considered an admission of those facts." ***Id.*** at 467 (citation omitted); ***see*** Pa.R.Civ.P. 1029(b), 1141(b).

Applying these rules, the trial court concluded that summary judgment was proper because the Gangadeens offered only general denials of Ocwen's claims, and such general denials must be considered admissions. Trial Ct. Op. at 4-5, 8. Moreover, the court noted that while Ocwen had submitted documents in support of its motion for summary judgment, the Gangadeens "submitted exactly zero exhibits." ***Id.*** at 7-8. After careful review, we agree with the trial court that Ocwen was entitled to summary judgment on this

record. The Gangadeens offered only general denials of Ocwen's averments regarding their default and the amount due. Such general denials cannot defeat summary judgment. ***See Gibson***, 102 A.3d at 467.

The Gangadeens argue that the trial court erred in granting summary judgment in favor of Ocwen because Ocwen's motion for summary judgment relied "entirely on its own unsupported declarations." Gangadeens' Brief at 16. In asserting this argument, they rely on the so-called "***Nanty-Glo*** rule," which stands for the view that summary judgment may not be entered solely on the basis of the moving party's oral testimony. ***See Nanty-Glo v. American Surety Co.***, 163 A. 523, 524 (Pa. 1932); ***see also*** Pa.R.Civ.P. 1035.2 Note. "An exception to this rule exists, however, where the moving party supports the motion by using admissions of the opposing party"; "[a]dmissions include facts admitted in pleadings." ***Gibson***, 102 A.3d at 466 (quotation marks, ellipses, and citations omitted). Here, the Gangadeens' reliance on the ***Nanty-Glo*** rule is misplaced because Ocwen did not rely entirely on its own assertions, but also relied on the Gangadeens' own admissions.

The Gangadeens also assert that their Answer, in which they denied the facts in Ocwen's complaint, and their New Matter raise issues of fact. Gangadeens' Brief at 16-17. However, as the trial court concluded, the defenses the Gangadeens raised in their New Matter did not preclude summary judgment because the Gangadeens offered no evidence to support

them.  *See* Trial Ct. Op. at 7-8; *see also Washington Fed. Sav. & Loan*,

515 A.2d at 981.

Orders affirmed.

*Judgment Entered.*

_Joseph D. Seletyn, Esq._
*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 9/26/2017*